CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 8 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TED JAMES JOHNSON, JR., | ) | Criminal Case No. 7:07cr00048 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2255 MEMORANDUM OPINION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | By: Samuel G. Wilson |
| Respondent. | ) | United States District Judge |

Following the collapse of a long-running Ponzi scheme operated out of his residence, a jury found Ted Johnson guilty of mail fraud, wire fraud, money laundering, securities fraud, operating an unregistered commodity pool, conducting a scheme to defraud pool participants, and embezzlement from the pool. The matter is currently before the court on Johnson's motion to vacate or set aside his conviction pursuant to 28 U.S.C. § 2255 based on ineffective assistance of counsel. Johnson maintains that his counsel rendered ineffective assistance at trial and on appeal in failing to challenge the government's seizure and use of "religious journals" and other records obtained in the search of his residence pursuant to a search warrant issued by a United States Magistrate Judge. According to Johnson, he had stored his journals on the "private side" of his closet with "other church materials and personal papers." (Pet'r's Br. in Supp. 21, ECF No. 192-1.) He contends that it should have been apparent that the materials were personal or religious in nature and not subject to seizure or use at trial. He then details at length the government's use of those records at trial to corroborate Johnson's fraud. (Addendum to Pet'r's Br., 42–45, ECF No. 192-1.) His underlying arguments conflate Fourth and Fifth Amendment analyses, find no support under the First Amendment, rely on rejected or vacated precedent, and ultimately collapse by demonstrating that the records were seized because they corroborate

financial crimes and not because of any ideas they contain. In any event, the court finds that counsel did not render ineffective assistance in failing to challenge the search of Johnson's residence, and denies Johnson's motion.

## I.

On October 5, 2005, Special Agent David T. Frey of the Federal Bureau of Investigation applied for and obtained a search warrant authorizing a search of Johnson's residence in Pearisburg, Virginia. The affidavit detailed a long-running Ponzi scheme involving millions of dollars by Johnson and his business partner, Frank G. Farrier, Jr., operated out of Johnson's residence; the use of entities (Mountain Investments, Ltd. and Dogwood Farms, Inc.) to carry out the scheme; the co-mingling of funds from investors with their own personal funds; and the use of the mails in carrying out the scheme in violation of 18 U.S.C. § 1341. The warrant detailed the items to be seized, including "any other documents or records which are evidence of the receipt, disbursement, or use of funds from investors or note holders." (Search Warrant, ECF No. 192-2.) Among the items seized were two spiral-bound journals, which, on their face, bear no apparent religious significance and which, at a minimum, contain considerable "evidence of the receipt, disbursement, or use of funds from investors or note holders," from 1997 through 2004 and, to an objective observer, document the inner workings of the Ponzi scheme. (Search Warrant, ECF No. 192-2; see also Gov't Trial Ex. 54-1.)[1]

---

[1] Though the court will not belabor the nonreligious nature of the entries contained in the government's trial exhibit 54-1 (which were compiled from Johnson's journals) there are indeed hundreds of entries in exhibit 54-1 that, objectively viewed, do not possess any discernible religious connections. In fact, the excerpts Johnson points to describe very well the mechanics of his scheme. For example: "Had to give Don Church $50,000 today and we don't have it. Made a call to Joe Pat Johnson and he loaned me $30,000. Frank called Steve McMurray and raised the other $20,000. Made the deposit at 4:30 and gave Church the check at 4:45." (Appeal Tr. 178, ECF No. 158); "I have to pay people today. Got the idea to go see Buck Gilmer. He agreed to lend me $30,000. Went to see Eddie Kendall. He wrote me a check for 20. Frank Farrier borrowed from Scott Geller. We met our obligation today and it was a huge relief. Had to go to Harold Vaught, money to Don Church, Virginia Nicole, Betty Lafon, and so forth." (Appeal Tr. 73, ECF No. 161); "Buck Gilmer said he would loan me money to cover Gourley. I think he is going to do it. I made up a note for him and left it at his business." (Appeal Tr. 87, ECF No. 161).

2

A federal grand jury returned a multiple-count indictment related to the scheme against Johnson and Farrier; Farrier pled guilty to various counts and testified against Johnson at trial; a jury convicted Johnson on thirty-eight counts; the court sentenced Johnson to 200 months (sixty-two months below the bottom of the Guideline range); Johnson challenged the money-laundering and commodity-pool convictions on appeal; the Court of Appeals affirmed, United States v. Johnson, 405 F. App'x 746 (4th Cir. 2010); and the Supreme Court denied certiorari, Johnson v. United States, 131 S. Ct. 2943, 180 L. Ed. 2d 234 (2011).

## II.

Johnson claims that his counsel performed deficiently in failing to challenge the seizure and use of his journals and other "private" records and papers and that, but for counsel's failure, there is a reasonable probability that Johnson would not have been convicted. He essentially makes three arguments concerning the seizure and use of those materials. First, he contends that "the search warrant failed to identify as a target of the search the religious journals of Mr. Johnson." (Pet'r's Br. in Supp. 20, ECF No. 192-1.) Second, he contends that his journals are "religious journals" which he authored "in obedience to the teachings of the Church of Jesus Christ of Latter Day Saints" and their use "constitutes an impermissible limitation and chilling of his freedom of speech and religious expression." (Id. at 17–18.) And third, he contends that their use at trial violated his right against compelled self-incrimination. (Id. at 19.) The court considers and rejects each of these arguments.

### A.

According to Johnson, the warrant failed to adequately describe his journals so as to permit their seizure. The court finds otherwise. As noted, the warrant detailed the items to be seized, including "any other documents or records which are evidence of the receipt,

3

disbursement, or use of funds from investors or note holders." Here, the spiral-bound journals contained considerable "evidence of the receipt, disbursement, or use of funds from investors or note holders," from 1997 through 2004. Their seizure fell squarely within the confines of the warrant's particular description of things to be seized, so as to steer clear of the Fourth Amendment's prohibition against general warrants and general searches.[2] Accordingly, the court rejects the argument that the warrant was not sufficiently particular to satisfy the Fourth Amendment.

B.

Johnson argues that his journals were personal or religious in nature and not subject to seizure or use at trial. The Supreme Court has made plain that the Constitution requires "scrupulous exactitude" of the Fourth Amendment's particularity requirement when the things to be seized are "books, and the basis for their seizure is the ideas which they contain." Stanford v. Texas, 379 U.S. 476, 485 (1965); see also Fuller v. Porter, 441 F.2d 755 (4th Cir. 1971). In Stanford, the search warrant authorized the seizure of materials related to the Communist Party of Texas, and law enforcement officials seized more than 2000 books and materials written by such authors as Karl Marx, Jean Paul Sartre, and Justice Hugo L. Black, based on the ideas those materials contained. Here, whatever religious significance Johnson attaches to his journals, there is absolutely no suggestion that law enforcement officials targeted them because of the ideas that

---

[2] "The [F]ourth [A]mendment prohibits general warrants and general searches." United States v. Fawole, 785 F.2d 1141, 1144 (4th Cir. 1986). To prevent general searches, a search warrant should remove "from the officer executing the warrant all discretion as to what is to be seized." United States v. Torch, 609 F.2d 1088, 1089 (4th Cir. 1979). Howver, the specificity required "varies with the circumstances within a practical margin of flexibility." United States v. Shilling, 826 F.2d 1365, 1369 (4th Cir.1987), abrogated on other grounds by Staples v. United States, 511 U.S. 600 (1994). "For example, in a search warrant for business records, it is acceptable for the warrant to use generic terms ('such as books, records, bank statements, etc.') without detailed descriptions because the government is unlikely to know in detail how the records are maintained." Ark. Chronicle v. Murphy, 183 F. App'x 300, 305 (4th Cir. 2006) (quoting Shilling, 826 F.2d at 1369).

they contain. They are rife with "evidence of the receipt, disbursement, or use of funds from investors or note holders" from 1997 through 2004. They fall squarely within the warrant's description of things to be seized and do not require heightened specificity. See United States v. Torch, 609 F.2d 1088, 1089–90 (4th Cir. 1979) (finding that the items named in the warrant were evidentiary materials, and their seizure did not threaten to deprive the public of access to protected material so as to require heightened specificity).

### C.

Johnson contends that the seizure of his private papers chronicling his thoughts and actions violated the Fifth Amendment prohibition against compelled self-incrimination. Johnson attempts to resurrect the very argument the Supreme Court rejected in Andersen v. Maryland, 427 U.S. 463 (1976). In Andersen, investigators searched the petitioner's office and seized incriminating business records. The petitioner claimed the records were "private papers" and that a search for a person's private papers violates the privilege against self-incrimination. The court firmly rejected the notion that statements the petitioner "had voluntarily committed to writing" could be the subject to the Fifth Amendment privilege.

Later, in United States v. Doe, 465 U.S. 605 (1984), the court rejected a Fifth Amendment privilege in subpoenaed documents, just as it had done earlier regarding seized documents. In concurrence, Justice O'Connor wrote:

> I concur in both the result and reasoning of Justice Powell's opinion for the Court. I write separately, however, just to make explicit what is implicit in the analysis of that opinion: that the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind. The notion that the Fifth Amendment protects the privacy of papers originated in Boyd v. United States, 116 U.S. 616, 630 (1886), but our decision in Fisher v. United States, 425 U.S. 391 (1976), sounded the death-knell for Boyd. "Several of Boyd's express or implicit declarations [had] not stood the test of time[,]" id., at 407, and its privacy of papers concept "had long been a rule searching for a rationale . . . ." Id., at 409. Today's decision puts a long-overdue end to that fruitless search.

5

Id. at 618 (alterations in original).[3]

### III.

Johnson's premises his ineffective assistance claim on an unlawful search, seizure, and use of his journals and other materials he labels "private papers."[4] For the reasons stated, that premise is meritless. Because the court finds that counsel's failure to advance a meritless

---

[3] Johnson cites United States v. (Under Seal), 745 F.2d 834 (4th Cir. 1984) (finding that the Fifth Amendment prevents the government from *subpoenaing* an individual's incriminating papers that are in his possession and held by him in an individual capacity), vacated sub nom. United States v. Doe No. 462, 471 U.S. 1001 (1985).

[4] Johnson raises a number of other claims premised on his argument that the seizure and use of his journals and other private records at trial and on appeal violated his First, Fourth, Fifth, and Sixth Amendment rights. The court rejects his premise and, consequently, those claims. Additionally, most of those claims are fundamentally flawed in other ways and misapprehend the core of § 2255 jurisprudence. He argues, for example, that the "Trial Court and 4th Circuit Court of Appeals erred in relying on the religious journal entries," and that it follows that his "conviction must be reversed." (Pet'r's Br. in Supp. 31–32, ECF No. 192-1.) First, § 2255 is no substitute for an appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a federal habeas proceeding only if the defendant can show both cause for and actual prejudice from the default or that he is actually innocent." United States v. Harris, 183 F.3d 313, 317 (4th Cir. 1999) (citations omitted). Second, it is axiomatic that this court has no jurisdiction or authority under the guise of § 2255 to adjudicate claims of error in the appellate courts.

Johnson also claims that the prison sentence the court imposed constitutes cruel and unusual punishment under the Eighth Amendment. Johnson could have raised the claim on direct appeal but failed to do so, and it is procedurally defaulted. The claim also lacks merit. Johnson's Guideline range under the United States Sentencing Guidelines was 262 to 327 months. Before imposing sentence the court noted:
> Although Mr. Johnson is a criminal history category I, day in and day out for more than ten years he knowingly operated a Ponzi scheme. When the economic tide rolled out, Mr. Johnson aggressively and in certain circumstances predatorily pursued new contributors in order to continue to pay himself and those he had duped earlier. He aggressively pursued the recently widowed, emotionally vulnerable, and quite often the unsophisticated. He understood that many of his investors were using non-discretionary income money many of them counted on for retirement.

(Appeal Tr. 83, ECF No. 168.)

Despite that finding, the court imposed a sentence of 200 months, sixty-two months below the low end of the Guideline range. The Court of Appeals has held that "proportionality review [under the Eighth Amendment's Cruel and Unusual Punishment Clause] is not available for any sentence less than life imprisonment without the possibility of parole." United States v. Malloy, 568 F.3d 166, 180 (4th Cir. 2009) (quoting United States v. Ming Hong, 242 F.3d 528, 532 (4th Cir. 2001)). But even if proportionality review were available, the substantially below-Guideline sentence the court imposed was in no sense grossly disproportionate to the offenses committed involving a long-running Ponzi scheme that defrauded investors of millions of dollars.

argument demonstrates neither deficient performance nor prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the court denies Johnson's motion.

**ENTER**: December 28, 2012.

_____
UNITED STATES DISTRICT JUDGE